Good morning. May it please the court, my name is Francisco León and I represent Leonel Villasenor in this appeal. I know I only have 10 minutes so I'd like to focus on two issues, the amendment of the indictment, the constructive amendment of the indictment and the sufficiency of evidence, unless the court has questions regarding the other two issues. The original indictment in this date unknown until March the 5th, the superseding indictment narrowed the terms of that conspiracy to March 5th. And that was on or about March 5th. On or about March 5th, correct. Not March 5th. And we proceeded on that basis that we were trying a conspiracy case that began or occurred on or about March 5th of 2003, shortly before trial, approximately seven days before trial, the prosecution disclosed that it wanted to bring in evidence of events in November of 2002 and in January of 2003. We objected to that, arguing that that that was outside of the scope of the of the conspiracy that was charged in the indictment. But our objection was overruled by the court and the court allowed the prosecution to bring in evidence that Mr. Villasenor had been stopped with a fellow named Daniel Sanchez about two months prior to the arrest, on March the 5th, and that Mr. Sanchez sometime in November of 2002, approximately two months or four months earlier, had apparently rented a warehouse where Mr. Villasenor was arrested. So would your position be that given the way the indictment was framed with a conspiracy, as I understand how the grand jury initially returned it, that occurred on March the 5th, that the government would be limited in its proof to only events that occurred on March 5th? They would not even be allowed to introduce evidence as to who rented the storage locker two, three months before? If the charge is that the conspiracy occurred on or about March the 5th, we submit that the evidence would have been limited to reasonably that evidence which supports a conviction that occurred on or about March the 5th. If that was your answer to my question, yes, the government would have been precluded from introducing evidence as to who rented the storage locker, even though he was still the registered lessor or lessee on March the 5th? I think that evidence would have been relevant on that date, but what the prosecution attempted to show was that there was a connection between Mr. Villasenor and Mr. Sanchez, and that the connection was that Mr. Sanchez had rented this storage locker on March the 5th, and Mr. Villasenor had rented it on March the 5th. And so the prosecution attempted to show that they had been together in January of 2003, and thus this showed a conspiracy. But on a conspiracy theory, isn't each day, in a continuing conspiracy, isn't each day relevant? So that if you, if there was a, if they were conspiring together on or about March 5th, that it might be relevant to show that this conspiracy had begun much earlier and was a continuing conspiracy. Well, there's certainly some, as you've mentioned, some relevancy to that, but there's certainly limits to relevancy as well. I mean, if you want to go back four or five months, or even four or five years, to show that they had knowledge of each other, that they knew each other, then I think you run into the objection that that evidence may be irrelevant because you don't know what the facts or circumstances are that they were together, or how it is that they knew each other. The issue here is whether or not they were conspiring to possess with an intent to distribute on or about March the 5th. There's no evidence at all that in November of 2002, when Mr. Sanchez rented this warehouse, that they were together, that they knew each other, that they associated with each other, and even the evidence of January of 2003, they were simply in a vehicle together that was being driven by Mr. Villaseñor. Aside from that, you know, the obvious objection is what relevance is that other than to show that they know each other or had been in a vehicle together? But why isn't that always relevant in a conspiracy charge when the nature of the crime, the elements require proof of an agreement between at least two people to engage in a criminal act? Doesn't that put the defendant on notice that he's going to have to face proof at trial that there's somebody else that he conspired with? Well, and that brings me to the second point of whether or not that is sufficient evidence to show a conspiracy. Let's assume and we can see that they were in the same vehicle in January of 2003. How does that show a conspiracy? We know practically nothing about the circumstances of January of 2003, other than that they were stopped for speeding and that Mr. Villaseñor and Mr. Sanchez were together, along with Mario Jacobo and his son and an elderly gentleman. And so, again, we come back to how is that relevant to show that they are engaged in a conspiracy, other than that they know each other? The mere fact that people know each other, we submit to the court. Without more, does it prove a conspiracy on or about March the 5th of 2003, as is charged in the superseding indictment? Well, it might if the proof shows a sufficient enough of a relationship between the owner of the leased premises and your client, who was found on the premises on March the 5th, wouldn't it? Well, but there was no such evidence shown, is the point. But that really goes, as you indicate, to the weight or the sufficiency of the evidence. And your variance argument, I think, and maybe I've got this analyzed incorrectly, your variance argument really goes to a challenge to the elements of the offense and surprise that the defendant claims to have suffered to his prejudice by not being earlier put on notice by a broader indictment that would tell him what, that he would have to face evidence of prior associations before March the 5th? Well, the indictment charged that Mr. Villasenor and Mr. Piscata conspired with each other and other unknown persons. And we're not arguing that there was a variance here. If it were a mere variance, we would argue, we would say we'd probably lose on that. What we're arguing is that the prosecution brings in its evidence and then asks the court, by jury instruction, amend the indictment, instead of charging on or about March the 5th, now say from a time unknown, so that it will include what evidence the prosecution now has brought in. And that is what we're submitting, not a mere variance. That is a constructive amendment of the indictment, which is But Ninth Circuit case law has always recognized, and we routinely tell juries in virtually every case that you need not find that the events occurred exactly on the date charged in the indictment. And I'm having a hard time understanding why what the district court did here was not in conformance with well-settled Ninth Circuit law. Well, as I say, I think there's a difference, and maybe it's just a matter of degree between variance and constructive amendment of the indictment. But isn't the difference that if the element of the crime is not laid in the indictment, then it's a constructive indictment? But this – but the date is not an element of the crime, is it, here? Well, we submit that it is, Your Honor, because the conspiracy has to have occurred on or about March 5th. That's what the indictment charges. So your position is if it doesn't occur on March 5th, then it's a constructive amendment of the indictment, and March 5th is an essential element of the crime of conspiracy? Well, on or about March 5th, because as you may have noticed, in fact, the superseding indictment charged March the 4th, and without objection from us, the prosecution asked the court to correct the indictment because it was a clerical error – not a clerical, but a typographical error. But, yes, we had notice, certainly, of what was happening on March the 5th, and we had that notice up until the day before trial when the prosecution discloses all this evidence about what happened in November of 2002 and in January of 2003. And now they're saying that that's part of the conspiracy, and they're also saying that Daniel Sanchez, the person who had rented this place back in November of 2002, was an unindicted co-conspirator for the first time the day before trial. That materially changes the indictment we submit and puts Mr. – Can I just say something of the typical charging language that names some of the members of the conspiracy and then says, and others unknown to the grand jury? Well, here's the problem with that, I think, and that is that such disclosure, if it's made early on in the case, at least allows the defendant to be able to know what he's going to be facing. Here on the day before trial, the prosecution reveals for the first time that Daniel Sanchez is an unindicted co-conspirator, according to their theory, and that now we have to defend against that association or that notion. The question for a bill in particular is asking the United States to identify the names of unindicted co-conspirators. No. We knew pretty much that on or about March the 5th, it was Hector Piscata and Mr. Villasenor and unknown persons. So is the complaint then really almost sort of a Jenks Act complaint that, you know, we didn't get our discovery until just before trial? Well, under the Jenks Act, they're not even required to disclose statements until after the witness has testified. In the District of Arizona, there's a practice where we waive the preliminary hearing in exchange for early Jenks Act disclosure. Early Jenks Act disclosure, we submit, ought to be at least longer or earlier than the day before trial, and it certainly ---- The problem is that's an argument you've got to make to Congress. We don't have the power to tell them to rewrite Section 3500. And I realize that, but that's why I say that our best argument, I think, is that this materially or constructively amended the indictment from what we should have been facing to what it is that the prosecution decided the day before. When you learned that the government was going to use Mr. Sanchez as one of the unindicted co-conspirators, that was the day before trial? Yes. Did you make a motion to continue the trial? No. My client had been in custody since March the 5th. We were early part of December, and we were prepared to go to trial. We wanted to go to trial. Now you're saying you weren't prepared to go to trial as against the evidence of Sanchez in November and January 2003? We weren't prepared in the sense that that material had not been disclosed to us. But you were prepared to go to trial? With what had been disclosed. And when you learned about Sanchez, you didn't make a motion to continue on the grounds that you needed more time to investigate the new circumstances? No. Do you want to save some time? You're out of time. Yes. All right. Great. We'll hear from Mr. You're going to have to help me with the pronunciation. Is it? For the United States, Judson Myhock. Myhock. Myhock. Thank you. Honor about March 5th, 2003 certainly put the defendant on notice that the indictment pertaining to the conspiracy charge, we weren't going to be constricted or restricted to acts which just occurred on March 5th, 2003. Did you charge it that way? I mean, doesn't the form book say beginning at a time unknown but continuing until honor about March 5th, 2003? And touching on what Mr. Leone said, it was a typographical error. The original complaint which was initiated, the action charged from a time unknown to honor about March 5th, 2003. The original indictment handed up April 2nd, 2003, charged from a time unknown to honor about March 5th, 2003. The superseding indictment which was handed up in June, and I've included the minutes from the grand jury with regard to that superseding indictment, the only effect of the superseding indictment was to add a count three with respect to the co-defendant, which was a charge of illegal reentry. The first two counts, there was no proof even put in whatsoever, and it was my oversight that there was a typographical error. How can it be a typographical error to omit the words from time unknown? So you're saying the superseding indictment, you left out the words from a time unknown and just said honor about March 5th? Actually, the first superseding indictment charge stated honor about March 4th, 2003. And I didn't – no one realized that error. In fact, on December 1st, 2003, the day before the trial, in pretrial hearings, the defense attorney even stated, I know the indictment charge is from a time unknown to honor about March 5th, 2003. So I think we were all proceeding under the presumption or acting with the thought that the indictment still read from a time unknown until honor about March 5th, 2003. The defense attorney was also on notice of that, not only from the disclosure, which comes to me in waves. I wish that the second I opened the file, the case agent popped out and said, here's everything you're ever going to need on this case. But on these reactive cases, there's follow-up, there's new discovery, there's new disclosure. And as soon as I get it, I review it and I give it to defense counsel. The connection between the defendant and the person who rented the warehouse and the SUV, the traffic stop, January 3rd, 2003, didn't come until a week before trial. As a courtesy to defense counsel, I picked up the phone right away and I said, listen, this is going to be our intent. I don't have the reports yet, but the agent just told me that he's shown photo packs to various witnesses. They've got your guy in a car in January with the guy who rented the warehouse using an alias. I'll get those reports to you as soon as I can. November 27th was Thanksgiving. November 28th, I made the reports available. And defense counsel didn't pick them up until the Monday before trial. Codefendant's attorney did pick up that disclosure on that Friday, the 28th. I did file a motion to continue the trial date, which I thought was a reasonable request. We'd had a suppression hearing in October, which is when defense counsel was on notice that a guy named Sanchez rented the warehouse from Vakili. He was also on notice that that same white SUV, that Yukon Denali with the Georgia plates, was being operated, was being, was a vehicle of interest. It was involved in another investigation in December and January of 2003. So he knew that the investigation was larger in scope in October at the hearing. So you moved for continuance and the defense objected, so the court denied your motion? Correct. We had that hearing in October. We didn't get a report and recommendation from the magistrate until November. The magistrate judge had suppressed all my statements and a lot of my other evidence. I filed a timely objection to that November 24th. We were still waiting for a decision from that, from the district court judge. And the district court judge decided that motion December 1st, rejected the report and recommendation, said my statements were back in, some of my other evidence was still out, some of the other evidence was in, and we're starting the trial tomorrow morning. So under those circumstances, I felt a little pressed, and I think we did the best that we could under those circumstances. But clearly there was no Fifth Amendment violation, there was no constructive amendment of the indictment. And I think what the court touched on earlier, on or about March 5th, 2003, it's certainly fluid. We're not talking about four or five years earlier. We're talking about four or five months earlier. And the net effect of what we did was very limited in scope. In November of 2002, a guy named Sanchez rented a warehouse. We were able to put that individual in a car driven by the defendant on January 3rd, 2003. That is the same vehicle that the defendant was driving on March 5th, 2003. And I'd like to now turn to the sufficiency of the evidence argument with regard to ---- Well, before you do that, if the purpose of the indictment is threefold, one of which is to protect from double jeopardy, another is to give the defendant notice of the charges that he's facing, and the third, I guess, is to allow him to raise a bar of statute of limitation, what would the limitation be in terms of how far back you could reach in the face of the indictment as it was framed? I mean, could you have gone back to show that ten years before the defendant had met with the person who later rented the unit? No, not when it's charged on or about March 5th, 2003. I think that would be reaching too far back. But I think that the four to five months is okay. I think that that certainly puts them on notice, especially when the complaint and the first indictment charged from a time unknown and as early, you know, in October he was cross-examining a witness about this vehicle's connection to a larger investigation. He knew that that conspiracy, we weren't talking about just March 5th, 2003, that we were talking about other acts and events which occurred prior to that date. I'm not going to touch the second issue, like defense counsel, with regard to the 851 information. The defendant got actual notice of it in July, five months prior to trial. So unless there are questions on that, I'll turn to the sufficiency of the evidence. With regard to the sufficiency of the evidence argument, it's viewed in the light most favorable to the prosecution. Any rational trier of fact could find the defendant guilty beyond a reasonable doubt. All inferences are to be drawn in favor of the jury's verdict, and all conflicts also resolved in favor of the jury's verdict. Counsel, believe me, we know what the law is on sufficiency of the evidence. Okay. If you want to argue the facts, go ahead. Yes, please. I don't need a primer, and I don't think my colleagues do either. Okay. I'm sorry. With regard to the conspiracy, there is clear evidence beyond a reasonable doubt establishing a conspiracy. The warehouse was rented by an individual, Marcus Sanchez, using the alias Daniel Sanchez. He paid cash up front for a business called Interans Incorporated, which doesn't exist. His stated purpose was to run a produce distribution business. There was never any legal produce or produce whatsoever seen going in or out of that warehouse. They never saw any workers, box trucks, refrigerator trucks. The only thing one of the neighbors who rented a nearby warehouse, worked at a nearby warehouse, ever saw there were two vehicles, an Avalanche or an Escalade, and the other being the white Yukon Denali with the fancy rims and the Georgia plates, the same vehicle the defendant's driving January 3, 2003, same vehicle the defendant's driving on March 5, 2003. From January to March of that year, five times he sees those two vehicles there. He smells a distinct odor he'd never smelled before. And on the stand he was shown a bale of bulk marijuana. He smelled it and identified that smell as that same smell that he had never smelled before. We have those on March 5, 2003, we get a glimpse and we finally get inside the warehouse. There's 52 bales of marijuana, 843 pounds. It was not grown inside the warehouse so it got there somehow, which again shows that there's other conspirators, other people acting and doing things. There's a sophisticated repackaging set up inside the warehouse. There's a scale, there's gloves, there's markers, there's spent cellophane and contact paper, 14 rolls of it actually. And in fact, it's the same exact contact paper that the defendant has on him when he's trying to enter the warehouse on March 5, 2003. And the agents testified on their experience, almost every search warrant they've conducted, they found that same contact paper in that stretch wrap. Marijuana or cocaine typically is wrapped in the stretch wrap first to keep it from drying out and then it's wrapped in the contact paper to conceal what's inside, to conceal its identity from people that were looking at it. And that's why they were doing these Home Depot operations, seeing who bought large amounts of this contact paper. So we're staking out the pharmacies for people buying cold medication and Home Depot for people buying big rolls of plastic paper. Contact paper. Is there anything else I should be aware of? Well, with six large rolls of contact paper, really the only legal reason to have contact, legal legitimate use of contact paper is to line shelves or to put it underneath sinks. With six large rolls, I think he had close to 700, 800 square feet of it, that he could reline all the shelves in San Francisco. I think that it's fair for them to look at that and think there was something else going on. And they've actually been quite successful in Arizona with that operation. With regard to the packaging inside the warehouse, it's important to note that the marijuana was wrapped in that cellophane, in that stretch wrap, but hadn't gotten to the point where it was wrapped in that contact paper, the same contact paper that the defendant was bringing to the warehouse. Counsel, would you briefly address, if you're successful, do you have any views as to what should be done about the sentencing in this case? I do, Your Honor. I think – I don't think it's a jury issue. Apprendi and Almendrez-Torres' dicta and Shepard aside are still the law. But I do think – can I finish this question? Oh, yeah, absolutely. But I do think that in light of this Court's en banc decision in Ameline, that it would be appropriate to remand this matter for resentencing. I can't say that the district court judge, if he had known that the guidelines were advisory, would have given the same exact sentence. And it also would give us a chance to correct the supervised release portion of the Let me understand you. You are in favor of a remand for sentencing, not an Ameline remand to let the district court determine whether to resentence. There's a difference. Do you understand the distinction? The Ameline – In Ameline, we say we leave it up to the district court to determine whether there should be a resentencing hearing. You're taking the position now, if I understand you correctly, that you wish us to order a resentencing to take place. Oh, no, no, no. I think it should be remanded. I think it's a nonconstitutional, potentially, error. I think that the district court judge, you know, it should be remanded and let him decide what he would do. Whether he needs to resent. Whether he needs to resentence. Okay. So you want a Crosby remand, essentially, under Ameline? Yes. All right. Okay. If I can use a shorthand. Counsel. On the sufficiency of the evidence issue, what we have here is two connections that the prosecution was able to show between Daniel Sanchez and Mr. Villasenor. The first is that they were in a vehicle together in January of 2003. The second is that Mr. Villasenor is at this warehouse, which is securely locked with an industrial-type lock, and there's absolutely no evidence at all that Mr. Villasenor was ever inside that warehouse or knew its contents. That is the sole extent of the evidence which the prosecution relies on. Was there some evidence that Mr. Villasenor was also jiggling the lock, trying to see if it was open? There was some testimony that he tugged on the lock to see if it would open, and it wouldn't open. And, in fact, there is evidence that when he was questioned by the officers, that he was asked whether he had a key. He stated no, he did not. He provided the keys that he did have, and they were all tried, and none of the keys that he had fit that lock. Basically, that's the evidence to show, one, a conspiracy with anybody, actually. What about the Home Depot shopping? What did he do with all the contact paper? Yeah. I mean, those guys load roll after roll of this stuff. It's six rolls. Or contact paper. It is a lot of contact paper, but whether or not he knew what Mr. Sanchez intended to do with it, if, in fact, it was for Mr. Sanchez, of which there is no evidence, but if, in fact, that's the case, how does the fact that somebody buys six rolls of contact paper make them a knowing participant in this conspiracy which is charged for the indictment? Can't the jury look at what the agents found inside the premises where your client was trying to gain entry and link the contact paper that he bought at the Home Depot with its use as packaging material inside that premises? If there was some evidence that he knew what was inside, yes. But as he testified or as he stated to the agents and what they testified to was, somebody, a friend of his, asked him to pick up the contact paper and drop it off at the warehouse. That's the evidence. What do you do with the neighbor's sighting of the white Denali with Georgia plates on five different occasions at the warehouse? He sees the vehicle. There's absolutely no evidence that he sees Mr. Villasenor there. And, in fact, the evidence is that that vehicle was seen at Mario Jacobo's house by Agent Tillis, who was doing that investigation. But that's the first time, well, that's the first time that Mr. Villasenor is seen in that vehicle apart from the January incident. But that's basically what the evidence is to sustain this conviction for conspiracy to possess this large quantity of marijuana. We submit it's insufficient. Very well. Thank you. The case just argued is submitted. And we will next hear.
judges: Tallman, Bybee, Bea